HENRY BRANZ v. OMAHA & COUNCIL BLUFFS RAILWAY & BRIDGE COMPANY; Appellant.

**Personal Injury:** ASSUMPTION OF RISK. An ordinary laborer on an electric railway, who never had occasion to make a car coupling or reason to suppose that he would be required to do so, does not assume the risk of defects in a car or drawhead of which he had no knowledge, when directed by his superior to make a coupling.

**Contributory Negligence.** In an action for injuries received while coupling cars, where there is a conflict in the evidence as to whether plaintiff made the coupling in the usual and safe method, an issue of fact arises for the jury to determine.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

FRIDAY, MAY 15, 1903.

ACTION to recover damages for personal injuries received by plaintiff while in the employ of defendant. Verdict for plaintiff, and from judgment thereon defendant appeals.—*Affirmed.*

*Wright & Baldwin* for appellant.

*F. W. Miller* for appellee.

McCLAIN, J.—Plaintiff was injured while coupling an electric motor car to a flat car. The employe in charge of the motor car, which was standing separated a short distance from the flat car to which it was to be coupled, started the motor car back towards the flat car with a sudden jerk after the plaintiff, who was trying to make the coupling, had stepped between the cars for the purpose. The momentum of the motor car was such that, although plaintiff successfully made the coupling, the cars came so close together before he could retreat that he was injured.

No complaint is made of rulings on the introduction of testimony, nor as to the rules of law stated in the instructions to the jury, but counsel for appellant urge that there was no evidence to support the allegations of negligence, and that without conflict in the evidence it appeared that plaintiff was guilty of contributory negligence. They contend that the case should not have been submitted, at least as to some of the allegations of negligence, and that after the verdict was returned for plaintiff, it should have been set aside on motion for new trial as without support. The negligence alleged was in using a defective motor car, which would not start at all until sufficient power was applied to make it start quickly and with a jump, the claim of plaintiff being that the coupling of the motor car to the flat car was rendered peculiarly hazardous by reason of this fact; also that the drawhead attached to the motor car, by means of which it was to be coupled to the flat car, was defective by reason of a break on one side in the surrounding collar, so that, when the coupling was made, the drawbars, instead of forming a stiff connection, preventing the motor from coming so near to the flat car as to injure plaintiff standing between them, gave way towards

the plaintiff, and allowed the motor and car to come so closely together as to crush him. There was evidence tend ing to support each of these allegations. Witnesses testi-fied that the motor car was out of order in the respect alleged, and had been in bad condition in this respect for some time before the accident, and while a witness for the defendant, who himself said that the car was in bad condition on the morning preceding the accident, testified that he had put it in good condition, his testimony was so far in conflict with that of the other witnesses as to what he did that the jury may well have found that the bad condition of the car was not remedied. As to the defective drawhead, the question whether the defect had any connection with the accident seemed to depend, under the evidence, on whether a gooseneck link was used in making the coupling. There is certainly some evidence tending to show the use of such link, and that, if that kind of a link was used, the defect in the drawhead would lead to just the kind of accident which happened. The defe t in the drawhead was shown to have existed for such length of time that defendant ought to have been aware thereof; and, indeed, it appears that its employe whose duty it was to keep the cars in order was aware of it, and allowed the car to be used without remedying the defect.

It is argued for appellant that plaintiff assumed the risk of the defective car and the defective drawh ad. But plaintiff was not engaged especially in the business of coupling cars. He was an ordinary laborer, working with other laborers of the same character. He had never before had occasion to make a coupling, nor had he any reason to suppose that he would be required to do so. In this particular instance he was asked by the foreman to make the coupling because he was nearer to the place where it was to be made than any of the other employes. He had no reason to know of defects in the car or the drawhead which were of any import-

1. ASSUMPTION of risk.

ance to him in his employment, and it does not appear that he had ever observed either of them. At the very time the coupling was made he had not a chance to know, before the danger arose, either that the motor was defective or that the drawhead was broken. Certainly, under these circumstances, there could be no assumption of risk.

As to the contributory negligence of plaintiff, there is evidence tending to show that he attempted to make the coupling in a reasonably safe manner, and in the manner in which such couplings were usually made. A witness for defendant testified that the coupling might have been made by plaintiff without going between the cars, and that such was the proper method. But there is evidence to the contrary as to the usual and safe method of making such couplings, and the question was for the jury. The same witness for defendant further testified that a proper method of making such coupling was to wait until the motor and flat car were near enough together to enable the coupling to be made and the motor had come to a stop. But here again the testimony was not at all conclusive. While counsel for defendant attempted to show that plaintiff had been instructed as to the proper method of making such coupling, and had been warned against the method which he employed, it is by no means shown beyond controversy that any such instruction or warning ever reached plaintiff. As above suggested, the making of couplings was not a part of his ordinary employment, and he had no occasion to seek instruction, as he had no reason to expect that he would be called upon to render such service.

2. Contributory negligence.

After a careful reading of the entire record, we are satisfied that there was evidence tending to sustain the contention of plaintiff under the issues on which the case was submitted, and that there was no error in refusing to grant a new trial.—AFFIRMED.