MATIE MARTENS, Appellee, v. HERMAN MARTENS, Appellant.

LIBEL AND SLANDER: Words Actionable—Imputation of Unchastity. It is slanderous *per se* to charge a woman with having been pregnant prior to her marriage. Evidence reviewed, and held sufficient to support such charge.

LIBEL AND SLANDER: Evidence—Repetition of Slander. On the trial of an issue of slander, evidence of the speaking of substantially similar statements to persons other than those charged may be admissible.

LIBEL AND SLANDER: Trial—Instructions—Scurrilous Adjectives—Effect. When the plaintiff bases a claim to recovery solely on the speaking of terms which were manifestly slanderous *per se*, it is not reversible error for the court to refuse to instruct that certain other vulgar terms applied by defendant to plaintiff were non-slanderous *per se*.

LIBEL AND SLANDER: Trial—Instructions—Separation of Actual and Exemplary Damages. Defendant has no arbitrary right to demand that the jury be instructed to so return their verdict that the same will show separately the amount allowed as actual and the amount allowed as exemplary damages.

APPEAL AND ERROR: Parties Entitled to Allege Error—Estoppel by Requesting Instruction. He who requests an instruction on a question of fact may not thereafter contend that there was no evidence to justify the submission of such question.

TRIAL: Instructions—Inapplicability to Proof—Refusal. Instructions not applicable to the proofs are properly refused.

WITNESSES: Examination—Leading Questions—Discretion. Prin-
7 ciple recognized that the trial court has a wide discretion in
the matter of allowing leading questions, especially in the ex-
amination of foreigners handicapped with imperfect knowledge
of the English language, plus sluggish temperaments.

*Appeal from Crawford District Court.*—E. G. Albert,
Judge.

Saturday, October 20, 1917.

Action to recover damages for an alleged slander. Ver-
dict and judgment for plaintiff, and defendant appeals.—
*Affirmed.*

*L. H. Salinger* and *Clement J. Welch,* for appellant.

*Conner & Powers* and *Andy Bell,* for appellee.

1. Libel and Slander: words actionable: imputation of unchastity.

Weaver, J.—Plaintiff is the wife of de-
fendant's brother, Ed Martens. As a cause
of action, she alleges that defendant, speak-
ing to her husband of and concerning her,
said, in substance:

"You (meaning Ed Martens) had better take that damn
bitch, that bobtail bitch of a woman of yours to the hospital
again and have two or three more kids taken away from her,
as was done before her marriage,"—meaning thereby to
imply that plaintiff had not been a virtuous woman prior to
her marriage to her then husband, etc. And that plaintiff
suffered thereby great distress of mind, humiliation and dis-
grace, and suffered in her good name and reputation with her
neighbors and acquaintances, and was damaged thereby in
the sum of $12,000, etc. She also alleges that, on another
occasion, the defendant, speaking of her to one L. C. Hohse
and one Jennie Hohse, said: "She, Matie Martens (mean
ing the plaintiff), was not a virtuous woman before her mar-
riage and had three illegitimate children before her mar-

riage to her present husband,"—meaning thereby to charge of and concerning the plaintiff that, before her marriage, she had been unchaste, and had had sexual intercourse with other men. The answer is a denial of the alleged slander. A further plea of privilege was stricken out on motion of plaintiff. The issues were tried and submitted to a jury, which returned a verdict in favor of plaintiff for $600. Defendant's motion for new trial was overruled, and he appeals.

I. The evidence in plaintiff's behalf as to the language used by defendant in speaking of her to her husband is more or less vague and involved, a condition of the record which is due to some extent to the fact that the parties and witnesses on both sides are Germans, who, though speaking the English language, have quite imperfect command of it, and not infrequently their answers indicate lack of complete comprehension of the inquiries of counsel; but we think it fairly tends to sustain the allegations of the petition. Plaintiff's husband, as a witness, first stated his version of the words spoken to him by the defendant as follows:

"He says to me, 'You had better take that damned old bitch of a woman back to the hospital and get two or three kids taken away from her.' I says, 'Can you prove it?' and he says, 'Yes, I can; John was there and he knows it,' and he said, 'John was there and he knows,' and I said to him, 'You are framing up that you will have to prove.' He says, 'Get you a lawyer and I will show you,' and I walked away. That was the conversation that day."

Again, he says:

"Yes, I forgot another little thing in there, 'That God damned old bobtail,' is what he called her, that comes in there where he said, 'You had better take that God damned old bitch, that God damned old bobtailed bitch back to the hospital and get two or three more kids taken away from her.' "

The defendant argues that these words, even if spoken

as stated, do not charge unchastity, and, if construed to mean merely a charge that plaintiff had submitted to an abortion, or had before been pregnant, it would not constitute slander *per se*, in the absence of any showing that, at the time referred to by the defendant, she was an unmarried woman. These objections would doubtless be good, if the testimony quoted were all that there is upon that subject; but the witness, at another stage of his examination, testified as follows:

"Q. Well, you say that he said it was before your wife was married that these kids had been taken away from her; now just tell where that came in and how it was said, that part of the answer; or did he say it was before she was married? A. Yes, sir, he said it was before she was married."

It was true that this witness was, upon cross-examination, led into more or less contradictory and inconsistent statements having legitimate tendency to discredit him, but his credibility was a question for the jury alone. The witness L. C. Hohse, speaking of the words charged to have been spoken by defendant to him concerning the plaintiff, testifies:

"Well, all he said was that she had children before she was married. I can't remember how he said it; that was too long ago. All I know is that he mentioned that she had children before she was married, and he called her a bob-tail."

2. LIBEL AND
   SLANDER:
   evidence:
   repetition of
   slander.

While the separate alleged cause of action based upon the defendant's statement to this witness was withdrawn from the jury, we think the evidence is admissible for its bearing upon the issues joined on the other count of the petition.

It follows that the record is not without support for a finding by the jury that defendant stated that plaintiff did become pregnant and have children, born or aborted, before she was married; and this we have no doubt is slanderous *per se*.

II. The defendant objects that the **3. LIBEL AND SLANDER: trial: instructions: scurrilous adjectives: effect.** words "bitch" or "damned old bitch" said to have been applied by him to plaintiff are not slanderous *per se*, and the court erred in not so instructing the jury, as requested by the defense. That these words alone are not slanderous *per se* may be admitted, but the charge on which plaintiff relies is not that these contemptuous terms were spoken of her, but of the other words used in connection therewith, which plainly charged that she had borne children before she was married. If such language was used, it clearly imported a charge against the woman's character for virtue. It needed no colloquium in the petition to make the charge definite or complete, and no proof that those who heard the words spoken understood them in a defamatory sense. While the instruction asked might well have been given, we are not disposed to hold that its refusal was error.

III. Error is assigned upon the giving of certain instructions, but, as no exception was taken thereto in the manner prescribed by statute, at or before the time when the jury was charged, the errors, if any therein, must be deemed waived.

In the motion for new trial, counsel **4. LIBEL AND SLANDER: trial: instructions: separation of actual and exemplary damages.** made affidavit that, before the charge was given the jury, they orally asked the court that, in submitting forms of verdict for the not so instructing the jury, as requested by case the jury found in plaintiff's favor, it should separately state or assess the actual or exemplary damages allowed her; and error is assigned upon the court's

failure so to do.  Assuming, but not holding, that the question may be properly raised in the manner here attempted, no error is shown.  There is no statute or settled rule of practice giving a party the right to make such demand.  If there be, in the judgment of the court, any good reason for this sort of cross-examination of the jury, it is perhaps within its discretion to submit such form of verdict, but the wisdom or propriety of it as a rule is not apparent.  This is especially true in a case of alleged slander *per se,* where there is neither charge nor proof of special damage.  Actual damages in such case are presumed, and, like exemplary damages, are left to the discretion of the jury—a discretion which the court cannot overrule, except where it is exercised so unreasonably as to indicate clearly the influence of passion or prejudice.  In a slander case so submitted on the mere presumption of damage, it is safe to say that no jury ever attempts to fix a sum by way of actual damages for the presumed injury, and then to add thereto another definite sum by way of example, but rather to name some reasonable amount which shall fairly answer both purposes.  The jury has enough conundrums to answer without adding to its embarrassment a command to separate the unseparable.

IV.  The defendant moved for a directed verdict in his favor; on the ground that there was no testimony on which a verdict could be sustained, and has assigned error on the refusal of this motion.  For reasons already stated, the ruling must be sustained.

Moreover, if there were any error in this

**5. APPEAL AND ERROR:** parties entitled to allege error: estoppel by requesting instruction.

respect, it would have to be treated as waived.  It is a well settled rule that a party asking instructions which, if given, would submit to the jury an issue of fact, cannot thereafter be heard to say that there was no evidence for the jury's consideration.  *Cheney v. Stevens,*

173 Iowa 289; *Gordon v. Chicago, R. I. & P. R. Co.,* 154 Iowa 449; *Carnego v. Crescent Coal Co.,* 163 Iowa 194. The defendant here requested the court to charge the jury as follows:

"The question of the plaintiff's character for virtue and chastity is not in this case. A verdict for the plaintiff would not prove that she was a virtuous or chaste woman, and a verdict for the defendant would be no evidence that she was impure or unchaste. The only things to be considered by you are: Did the defendant speak the words the plaintiff charges    him    with,    and    what    damage    has    plaintiff sustained?"

Modifying it somewhat in form, the court gave the instruction as follows:

"The real character of the plaintiff for virtue and chastity is not an issue in this case. A verdict for the plaintiff would not prove that she was a virtuous or chaste woman, and a verdict for the defendant would be no evidence that she was impure or unchaste. The only things to be considered by you are: Did the defendant speak the words, or substantially the words, charged by the plaintiff? And if you so find by a preponderance of the evidence, then what damage, if any, has the plaintiff sustained?"

Practically the only material change made in the form of the instruction as asked was in the insertion of the phrase, "or substantially the words," where they appear in the last sentence of the paragraph. It thus appears that the defendant, adopting the theory that the record presented a case for the jury, asked the court to charge that the one issue to be considered was whether defendant did or did not speak the alleged slanderous words, and if so, to determine the amount of plaintiff's damages. Acquiescing in that theory, the court did so instruct, and no error can be successfully assigned upon the ground that no case for the jury was presented, or that the speaking of the alleged words did

not amount to slander *per se.* The modification of the instruction does not materially affect the situation, because: First, the modification was proper; and second, even if the court erred in respect thereto, or had refused the instruction entirely, the asking of it would still work a waiver of the right to urge an exception to the submission of the cause to the jury.

6. TRIAL: instructions: inapplicability to proof: refusal.

V.   It is further said by appellant that the court should have instructed the jury that, if the alleged slanderous words were spoken in German, no recovery could be had by the plaintiff, because her petition alleged the words to have been spoken in English.

The petition does not in terms aver that the words were spoken in English, but such is the fair, if not the necessary, implication. But we think there was no evidence upon which the jury would be justified in finding that the words, if spoken at all, were in German. The defendant does not say they were in German, for he denies using the opprobrious words at all; while the plaintiff's husband, the only other witness attempting to repeat the interview, says they were spoken in English. At one place in his testimony, while speaking of the quarrel in general terms, the witness does say that the talk was partly in English and partly in German; but, when his attention was directed to the particular words of alleged slander, he says specifically that they were spoken in English; and, assuming that the jury found, as it evidently did find, that the slander was in fact uttered as charged, there could be no finding or proper inference that it was spoken in the German tongue. The assignment of error must be overruled.

7. WITNESSES: examination: leading questions: discretion.

VI.   The point for reversal most elaborately argued is that the court erred in permitting counsel for plaintiff to put leading questions to his own witnesses. This has

special reference to the examination of Ed Martens, the husband of plaintiff.

Appellant has brought into the record very considerable portions of the examination, questions and answers, to illustrate the point so made. We shall not extend this opinion for their reproduction. It must be admitted that plaintiff's counsel were given a wide margin of liberty in this examination, and at times its permission came perilously near the boundary line between sound judicial discretion, and its abuse; but the circumstances were such that we do not feel justified in holding that this boundary was actually transgressed. The witness, as we have before noted, was evidently a man of foreign birth, and had acquired but very imperfect mastery of the language of his adopted country; and this handicap, emphasized by an evidently sluggish mental equipment, made his examination one of real difficulty. To get anywhere with such a witness, a degree of leading is permissive which would be wholly out of place under other circumstances. It is a very rare occurrence where an appellate tribunal will order a reversal on such grounds, and we think such an exceptional case is not here presented.

Other points are made in argument, but all appear to be ruled by the conclusions hereinbefore stated. We find no reversible error in the record, and the judgment of the district court is—*Affirmed.*

GAYNOR, C. J., PRESTON AND STEVENS, JJ., concur.